# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

REBECCA FLORES,

Plaintiff,

v.

CALIFORNIA PUBLIC UTILITIES COMMISSION, et al.,

Defendants.

Case No. 1:26-cv-00307-KES-SKO

**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S COMPLAINT AND *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER BE DISMISSED FOR LACK OF JURISDICTION**

(Doc. 7)

<u>14-DAY DEADLINE</u>

Plaintiff proceeds *pro se* and *in forma pauperis* with a civil rights action under 42 U.S.C. section 1983. Plaintiff has filed an *ex parte* "Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction," seeking "an order preventing Defendants from disconnecting her electric service during the pendency of this action." (Doc. 7).

Because the Court lacks jurisdiction, the undersigned recommends dismissing the First Amended Complaint and Application for a Temporary Restraining Order for lack of jurisdiction.

## I.   BACKGROUND

Plaintiff is proceeding on her First Amended Complaint ("FAC") filed on February 9, 2026. (Doc. 5). The FAC alleges "ongoing deprivations of Plaintiff's constitutionally protected property and utility service interests without adequate notice or a meaningful opportunity to be heard." (*Id.* at 1).

On March 16, 2026, the undersigned screened the FAC and found it stated a cognizable section 1983 procedural due process claim against Defendants and, therefore, found service of the FAC on Defendants appropriate.  (Doc. 6 at 1).

## II.      PLAINTIFF'S TRO MOTION

In her application for a Temporary Restraining Order ("TRO"), Plaintiff alleges that she has "previously experienced disconnection of her electrical service" related to what amounts to a billing dispute at the center of the matter before this Court.  (*See* Doc. 7 at 1).  Plaintiff alleges that upon receipt of "a final administrative decision from the California Public Utilities Commission dismissing her complaint," she no longer has "any remaining administrative avenue for relief" and "faces irreparable harm from the loss of essential utility service."  (*Id.*).  In a supplemental declaration, Plaintiff declares that "[o]n or about March 19, 2026 . . . [she] received a disconnection notice from PG&E."  (Doc. 11 at 3).

## III.      LEGAL STANDARD

The Court has an obligation to examine subject-matter jurisdiction issues *sua sponte*. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).  Federal courts are of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

## IV.      DISCUSSION

Under the Johnson Act, federal courts lack jurisdiction over "all suits affecting state-approved utility rates." *Abcarian v. Levine*, 972 F.3d 1019, 1029–30 (9th Cir. 2020).  The Johnson Act states:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
>
> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
>
> (2) The order does not interfere with interstate commerce; and,
>
> (3) The order has been made after reasonable notice and hearing; and,
>
> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342.

Although the text of the Johnson Act focuses on ratemaking "orders," the Ninth Circuit has construed it to apply to "all suits affecting state-approved utility rates." *Abcarian*, 972 F.3d at 1029–30. Indeed, when "a party challenges the rate-making system, including any particular procedure th[e] . . . system employs, the Johnson Act bars federal jurisdiction." *US West, Inc. v. Nelson*, 146 F.3d 718, 722 (9th Cir. 1998).

The Ninth Circuit has broadly interpreted the Johnson Act as prohibiting both direct challenges to a specific rate-setting order, as well as indirect challenges that "might have an impact on future rate orders" or that could be used to enjoin enforcement of a past order. *Id.* at 722–23; *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1054 (9th Cir. 1991) ("Congress did not intend to withdraw from federal courts the power to enjoin state rate orders directly but leave undisturbed the power to do so indirectly."). The Ninth Circuit has cautioned that a Plaintiff's description or characterization of their challenge is not determinative. *US West*, 146 F.3d at 722. Nor does a plaintiff avoid the Johnson Act by alleging constitutional claims that are unrelated to state ratemaking orders. *Id.*; *Abcarian*, 972 F.3d at 1030.

The plaintiffs in *US West*, for example, claimed to challenge a policy rather than a specific rate order. 146 F.3d at 722. The Ninth Circuit was not convinced and instructed that "the way that [plaintiffs] have chosen to describe their grievance does not control whether the Johnson Act bars this action." *Id.* And in *Abcarian*, the Ninth Circuit explained that the Johnson Act would "be a nullity if it could be evaded through the simple artifice of adding some other federal claim to the complaint." 972 F.3d at 1030.

In sum, the Ninth Circuit has repeatedly emphasized the jurisdictional nature of the Johnson Act:

> In barring federal courts from exercising jurisdiction to interfere with state rate orders in specified circumstances, the text of the Johnson Act necessarily focuses on the jurisdictional basis on which the court is asked to grant such relief. The happenstance that there may or may not be other claims in the case is irrelevant—especially given the fact that ... the additional claims asserted in the action may have nothing to do with state rate orders at all.

*Cannara v. Nemeth*, 21 F.4th 1169, 1175 (9th Cir. 2021) (quoting *Abcarian*, 972 F.3d at 1030). And Ninth Circuit precedent establishes that the substance and effect of a plaintiff's challenge drives the jurisdictional analysis, not the form. *US West*, 146 F.3d at 722. And the Ninth Circuit has "broadly construed the Act's jurisdictional bar to oust federal courts of jurisdiction over all challenges affecting rates." *Cannara*, 21 F.4th at 1175 (quoting *Brooks*, 951 F.2d at 1054); *US West, Inc. v. Tristani*, 182 F.3d 1202, 1207 (10th Cir. 1999) (explaining the Johnson Act is designed to keep rate challenges out of federal courts "lock, stock, and barrel" and relying on *US West v. Nelson* and other Ninth Circuit cases interpreting the Act).

Here, Plaintiff's claims are subject to the Johnson Act. The First Amended Complaint describes the wildfire surcharge at issue as resulting in "ongoing deprivations of Plaintiff's constitutionally protected property and utility service interests without adequate notice or a meaningful opportunity to be heard." (Doc. 5 at 1). The second paragraph of the First Amended Complaint states "[t]his action challenges a statue -authorized securitization structure created and enforced by defendants that converts customer-derived billing revenues into pledged 'recovery property,' monetizes those revenues for the benefit of third-party bond holders, and imposes automatic, non-bypassable charges on residential utility customers without individual notice or pre-deprivation process." More significantly, the relief Plaintiff seeks conclusively demonstrates that she is challenging a ratemaking: Plaintiff asks the Court to find unconstitutional "Defendants' policies and practices of imposing and enforcing recovery-related or securitized charges against Plaintiff's utility account without constitutionally adequate notice and a meaningful opportunity to be heard" and to enjoin "Defendants from collecting, enforcing, or threatening disconnection based upon such charges against Plaintiff unless and until constitutionally sufficient pre-deprivation notice and hearing procedures are provided." (*Id.* at 16). This relief would necessarily "affect state-approved utility rates," despite Plaintiff's effort to reframe her claims as non-rate related. *See Abcarian*, 972 F.3d at 1029–30.

The undersigned acknowledges that the Johnson Act has several procedural requirements, including the "reasonable notice and hearing" requirement. 28 U.S.C. § 1342. In *Brooks*, the Ninth Circuit concluded that "hold[ing] a hearing before approving any rate change" and

"provid[ing] thirty days notice" was sufficient. 951 F.2d at 1054.  In *Abcarian*, the Ninth Circuit addressed the procedural requirement in a single conclusory sentence: "The official records of the City Council confirm that the three rate-setting ordinances at issue were indisputably 'made after reasonable notice and hearing.'"  972 F.3d at 1032.  And in *Cannara*, the Ninth Circuit held that "the process that the CPUC provided in its [wildfire] surcharge proceedings," the same policies at issue here, "surpassed what [the Ninth Circuit] accepted in prior cases."  *Cannara*, 21 F.4th at 1176 (citing *Brooks*, 951 F.2d at 1054).  The undersigned finds that the Johnson Act's requirement of reasonable notice and hearing has likewise been met here.

Finally, the undersigned finds that there is no plausible allegation of interference with interstate commerce, *see Desoto Cab Co., Inc. v. Picker*, 196 F. Supp. 3d 1107, 1114 (N.D. Cal. 2016) ("the mere fact that [transportation network carriers] engage in interstate commerce is not enough to establish interference with interstate commerce"), and there are adequate remedies in state court, *see Cannara*, 467 F. Supp. 3d 877, 883 n.2 (N.D. Cal. 2020) (noting that "[j]udicial review of CPUC orders is provided for by California state law," that "[s]uch appeals are granted preference, . . . and where constitutional challenges are raised, California state courts are directed to 'exercise independent judgment on the law and the facts'" (quoting Cal. Pub. Util. Code §§ 1756–67)), *aff'd*, 21 F.4th 1169 (9th Cir. 2021); *see also US West*, 146 F.3d at 725–26; *Brooks*, 951 F.2d at 1055–56).

In sum, the undersigned finds that the Johnson Act's procedural conditions have been met and the Act strips this Court of jurisdiction over this matter.

## V.     CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's First Amended Complaint, (Doc. 5), and Application for Temporary Restraining Order, (Doc. 7), be DISMISSED for lack of subject matter jurisdiction.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these

findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __**April 2, 2026**__          ____ /s/ *Sheila K. Oberto* ____
UNITED STATES MAGISTRATE JUDGE